# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:18-cv-00164-FDW

| | |
|---|---|
| **RICKY HOBART PARSONS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **FNU BEAVER, et al.,** ) | **ORDER** |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Rhonda Jolley, RN's, Pre-Answer Motion to Dismiss Plaintiff's Complaint. [Doc. 20].

## I. BACKGROUND

Pro se Plaintiff Ricky Hobart Parsons is an inmate of the State of North Carolina, currently incarcerated at Central Prison in Raleigh, North Carolina. Plaintiff filed this action on October 3, 2018, pursuant to 42 U.S.C. § 1983, naming as Defendants: (1) FNU Beaver, identified as the Superintendent of Alexander Correctional Institution in Taylorsville, North Carolina; (2) FNU Dye, identified as the Assistant Superintendent at Alexander; (3) FNU Murray, identified as an Assistant Unit Manager at Alexander; (4) FNU Padgett, identified as an evening shift sergeant at Alexander; (5) FNU Hensley, identified as an evening shift correctional officer at Alexander; (6) FNU Jolley, identified as an evening shift registered nurse at Alexander; (7) FNU Hatch, identified as an evening shift registered nurse at Alexander; (8) FNU Gaberial, identified as a first shift nurse practitioner at Alexander; and (9) FNU Arnie, identified as a first shift nurse practitioner at Alexander. Plaintiff brings claims against certain Defendants for deliberate indifference to serious medical needs in violation of his Eighth Amendment rights and against other Defendants for

denying his First Amendment right of access to the courts.

Plaintiff sues Defendant Jolley, who was a nurse at Alexander at all relevant times, in her individual and official capacities. [Doc. 1 at 6]. As to Defendant Jolley in particular, Plaintiff alleges the following: At approximately 8:30 p.m. on May 30, 2017, he was in his room at Alexander. [Id. at 13, 18]. Plaintiff began experiencing "acute chest pains raidiating [*sic*] into [his] left arm and lower jaw." [Id. at 18]. Plaintiff reported to the first-floor correctional officer that he was having chest pains and needed to declare a medical emergency. The officer told the Plaintiff to sit down in the day room while the officer went to inform a nurse. Approximately two minutes later, the officer returned and took Plaintiff to the treatment room on Blue Unit. Plaintiff was seen by Defendant Jolley, a registered nurse. Defendant Jolley asked Plaintiff to describe the pain. Plaintiff told her it was "acute throbbing pressure in the left side of [his] chest and it was radiating into [his] left arm and left side of [his] lower jaw." Defendant Jolley took the Plaintiff's vital signs. Plaintiff asked her if he could have a nitroglycerin tablet. Defendant Jolly refused to give him one. Defendant Jolley also refused to do an EKG to check Plaintiff's heart, "even though there is a standing order to do a[n] EKG when [Plaintiff] declares a medical emergency for chest pains." [Id. at 18-19]. Defendant Jolley told Plaintiff to return to his cell and to declare another medical emergency if Plaintiff continued to have chest pains. Defendant Jolley also failed to call the on-call medical provider as ordered in the nursing protocol. Plaintiff returned to his room and laid down. [Id. at 19].

At approximately 10:00 p.m., Plaintiff declared another medical emergency for chest pains. The correctional officer "pulled [Plaintiff] out of the block" and had Plaintiff sit in the hallway while the officer informed Defendant Jolley. [Id.]. The officer returned and told Plaintiff that Defendant Jolley refused to see Plaintiff again, that Defendant Jolley would write up the Plaintiff

2

for malingering, and that Defendant Jolley was tired of Plaintiff harassing the nursing staff. Defendant Jolley did, in fact, write up the Plaintiff for "faking a medical illness or injury," to which Plaintiff pleaded guilty in order to receive reduced punishment. [Id. at 19-20].

In a claim against Defendant Gaberial, Plaintiff alleges indirectly that he suffers from a cardiac condition, which requires nitroglycerin. [Id. at 21]. Plaintiff does not identify this alleged condition or allege any history of heart attack. [See id., generally]. Further, other than Plaintiff's allegation that there is "standing order" to administer an EKG when Plaintiff complains of chest pain, [Id. at 18-19], Plaintiff does not allege that, on May 30, 2017, Defendant Jolley was aware that Plaintiff has a medically recognized heart condition or a history of illness that would support his alleged need for nitroglycerin or an EKG. [See id., generally]. Rather, Plaintiff alleges that Defendant Jolley wrote up the Plaintiff for faking a medical illness and told him to stop harassing the nursing staff. [Id. at 19-20].

Plaintiff claims that he suffered acute pain for several hours and mental anguish over fear of having a heart attack as a result of the medical staff's inadequate responses and refusals to provide care. [Doc. 1 at 27]. Plaintiff seeks injunctive relief and compensatory damages.

On March 18, 2019, the Court conducted a frivolity review of Plaintiff's Complaint and allowed Plaintiff's claims to proceed. [Doc. 9]. The parties are currently in discovery, with dispositive motions due on February 1, 2020. [Doc. 30]. Defendant Jolley, a nurse at Lanesboro at all relevant times, has now filed the pending motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff has not sufficiently stated a claim for deliberate indifference to serious medical needs against her. [Doc. 20]. On August 20, 2019, this Court entered an order giving Plaintiff notice of his right to respond to the motion to dismiss within fourteen days of that Order. [Doc. 26]. Over two months have passed, and Plaintiff has not

responded. This motion is, therefore, ripe for adjudication.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. 662 at 678).

## III. DISCUSSION

To state a claim for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

As to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v.

Sheahan, 196 F.3d 839, 846 (7th Cir.1999)). As to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837); see also Makdessi v. Fields, No. 13-7606, 2015 WL 1062747, at *9 (4th Cir. Mar. 12, 2015) (holding that the subjective prong "may be proven by circumstantial evidence that a risk was so obvious that it had to have been known"). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Moreover, while the Constitution requires a prison to provide inmates with medical care, a prisoner is not entitled to receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's difference of opinion over matters of expert medical judgment or a course of medical treatment do not rise to the level of a constitutional violation. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A § 1983 action must fail where the plaintiff fails to allege that the defendant personally denied plaintiff's constitutional rights. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The Court may dismiss a complaint that contains conclusory allegations unsupported by any averment of facts. Mason v. Potter, 81 Fed. Appx. 767, 768 (4th Cir. 2003). Further, the presence

"of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts cannot support a finding of deliberate indifference." Young, 238 F.3d 567, 577 (4th Cir. 2001).

Here, in support of his deliberate indifference claim against Defendant Jolley, Plaintiff claims that Defendant Jolley refused Plaintiff nitroglycerin to treat his complaints of acute chest pain radiating to his left arm and jaw. Plaintiff further alleges that Defendant Jolley refused to administer an EKG on the Plaintiff despite a standing order to do so when Plaintiff complains of chest pain. Plaintiff also alleges that on his second complaint of chest pain in the same evening, Defendant Jolley refused Plaintiff treatment and, instead, wrote him up for malingering. Plaintiff only indirectly alleges having a cardiac condition, which he fails to further identify. As damages, Plaintiff claims he suffered mental anguish over fear of suffering a heart attack while being refused treatment.

This case presents a very close call. Plaintiff is saved only by his allegation that there was a standing order to administer an EKG in the face of Plaintiff's Complaints of chest pain. Without this, there is nothing from which to infer that Defendant Jolley had subjective knowledge of a substantial risk of serious harm to the Plaintiff. Plaintiff's other allegations regarding Defendant Jolley suggest, rather, that Plaintiff was a malingerer and frequently sought unnecessary medical care. Further, should it prove that Plaintiff did not have some history of serious heart issues, the denial of the medical care at issue may not be sufficiently serious to support an Eighth Amendment violation in any event. Also, Plaintiff's alleged mental anguish over the alleged denial of care would certainly appear exaggerated and not reasonably foreseeable in the absence of an existing heart condition.

The Court, however, is constrained to find that Plaintiff has sufficiently stated a claim for

deliberate indifference under the Eighth Amendment against Defendant Jolley in her individual capacity. Because Plaintiff has sufficiently stated a claim for a violation of a constitutional right and because the right at issue was clearly established at the time of the alleged misconduct, Defendant Jolley is not entitled to qualified immunity.

Plaintiff's claim against Defendant Jolley in her official capacity, however, will be dismissed. Suit against Defendant Jolley in her official capacity is essentially a suit against the State. Neither the State of North Carolina nor its agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claim against Defendant Jolley in her official capacity will be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendant Jolley's Motion to Dismiss is granted as to Plaintiff's claims against Defendant Jolley in her official capacity and denied as to Plaintiff's Section 1983 claim against Defendant Jolley in her individual capacity.[1]

---

[1] Defendant Jolley also argues that Plaintiff fails to state a claim for medical negligence on Plaintiff's failure to satisfy the expert certification requirement of Rule 9(j) of the North Carolina Rules of Civil Procedure and because Plaintiff fails to allege breach of a duty, injury, or damages. [Doc. 10 at 10-12]. It is evident from a plain reading of Plaintiff's Complaint that he did not even attempt to state a claim for medical negligence. As such, there is no medical negligence claim for the Court to dismiss. Even if he had, Defendant Jolley is correct that any such claim would be subject to mandatory dismissal for failure to satisfy Rule 9(j). See Fed. R. Civ. P. 9(j).

**ORDER**

**IT IS, THEREFORE, ORDERED THAT** Defendant Jolley's Motion to Dismiss [Doc. 20] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's claims against Defendant Jolley in her official capacity and **DENIED** as to Plaintiff's claims against Defendant Jolley in her individual capacity in accordance with the terms of this Order.

Signed: October 29, 2019

Frank D. Whitney
Chief United States District Judge